**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

MAY 2 2 2026

GARY P. SERDAR
CLERK OF COU.

BY _____
_____ DEPUTY CLERK _____

**PAIGE WILLIAMS,**
            Plaintiff,

v.

**eBAY INC.,**
a Delaware Corporation,
            Defendant.

            **Civil Action No.:**

Case: 4:26-cv-00059
Assigned To : Kohler, Paul
Assign. Date : 05/22/2026
Description: Williams v. eBay Inc.

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

This is an action for employment discrimination, retaliation, and wrongful termination arising from Defendant eBay Inc.'s sustained, documented, and willful violations of federal and state law over the course of Plaintiff Paige Williams' nine-and-a-half-year employment. Plaintiff brings this action not merely for personal relief, but because the documented pattern of institutional misconduct described herein has affected and continues to affect other employees who utilize legally protected leave pathways and assert their civil rights.

Every concern raised by Plaintiff was communicated through eBay's own Standard Operating Procedures, to HR directly, to leadership directly, and in writing — generating formal case numbers within eBay's own HR infrastructure. The record of Defendant's violations was built, preserved, and documented within Defendant's own systems. Defendant cannot credibly claim ignorance of any allegation in this Complaint.

### I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under: the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et seq.; the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); and the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A.

2.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

3.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Utah, Plaintiff resides in Utah, and Defendant conducts substantial business operations in Utah, including the facilities at which Plaintiff was employed.

4.   Plaintiff has exhausted all required administrative remedies. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue authorizing the filing of this action. This Complaint is filed within ninety (90) days of Plaintiff's receipt of said Notice, as required by 42 U.S.C. § 2000e-5(f)(1). Plaintiff has additionally satisfied all prerequisites to suit under the Utah Antidiscrimination Act ("UADA"), Utah Code Ann. § 34A-5-107.

## II. PARTIES

5.   Plaintiff Paige Williams (Employee ID No. 00280425) is, and at all relevant times was, a resident of the State of Utah. Plaintiff was employed by eBay at its Utah facilities from October 2014 through January 24, 2024, in the position of Premium Services Front Office representative, among other titles held during her tenure. At all relevant times, Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102, is a member of a class protected under Title VII, and is a female employee protected under the Equal Pay Act and Title VII.

6.   Defendant eBay Inc. is a Delaware corporation authorized to do and doing business in the State of Utah. eBay is a publicly traded company whose shares are listed on the NASDAQ Global Select Market (ticker: EBAY) and which files periodic reports with the Securities and Exchange Commission. At all times relevant hereto, eBay was Plaintiff's employer within the meaning of the ADA, 42 U.S.C. § 12111(5); Title VII, 42 U.S.C. § 2000e(b); and the FMLA, 29 U.S.C. § 2611(4). eBay employs more than five hundred (500) employees and is engaged in an industry affecting commerce within the meaning of all applicable federal statutes.

## III. STATEMENT OF FACTS

### A. Employment Background and Sustained Exemplary Performance

7.   Plaintiff Paige Williams was employed by Defendant eBay Inc. for approximately nine years, from 2014 through her unlawful termination on January 24, 2024. Throughout her tenure, Plaintiff held positions within eBay's Premium Services Front Office and Social Media departments, among other roles.

**8.** Throughout her employment, Plaintiff consistently performed at or above expectations, regularly exceeding her target performance metrics. Plaintiff was audited on at least two occasions specifically for overperforming — not underperforming. In the period immediately preceding her termination, Plaintiff's direct manager, Blaise Rwizriria, documented that Plaintiff was achieving 177% of her target goals. During other periods, Plaintiff's productivity reached 200% of target. Plaintiff received no disciplinary actions regarding her performance or conduct throughout her tenure.

**9.** Prior to and during her employment, Plaintiff maintained qualifying disabilities under the ADA for which she held active accommodation agreements predating her employment with eBay. All associated medical appointments were long-established, consistently managed, and proactively documented with Plaintiff's healthcare providers throughout her employment.

**10.** Plaintiff is a member of a protected group. Throughout her employment, Plaintiff raised all concerns regarding discrimination, harassment, leave rights, and institutional misconduct through eBay's own Standard Operating Procedures — directly to HR in writing, directly to leadership in writing, and through formal complaint channels — generating formal case numbers within eBay's own HR infrastructure.

### B. Discriminatory Compensation — The Raphael Garcia Pay Disparity

**11.** During her employment in the Premium Services Front Office, Plaintiff consistently received performance ratings of "higher" than target. On at least one occasion, during the 2017-2018 merit raise cycle, Plaintiff was compelled to formally inquire of HR why her raise was substantially lower than that of Raphael Garcia, a male colleague holding the identical Premium Services Front Office position in the same department, who had commenced employment contemporaneously with Plaintiff and who received a raise 6% greater than Plaintiff's despite equivalent roles, equivalent tenure, and Plaintiff's superior performance ratings.

**12.** Defendant never provided a legitimate, non-discriminatory, non-gender-based, or non-race-based explanation for this pay disparity. This disparity constitutes a violation of the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII, 42 U.S.C. § 2000e-2(a), and establishes a pattern of discriminatory compensation that persisted throughout Plaintiff's employment.

### C. Systematic Disclosure of Protected Health Information and ADA Violations

**13.** Manager Marissa Lamoreaux unlawfully and repeatedly disclosed Plaintiff's confidential medical information, disability status, and ADA accommodation details to Plaintiff's coworkers, other managers, and unauthorized personnel throughout Plaintiff's employment, in direct violation of the ADA's confidentiality provisions, 42 U.S.C. § 12112(d)(3)-(4). This disclosure was so pervasive that multiple supervisors throughout eBay began routinely referring other employees to Plaintiff for guidance on FMLA, ADA, and STD leave procedures — an institutional acknowledgment of how broadly Plaintiff's protected health information had been disseminated.

**14.** As a direct and foreseeable consequence of Defendant's negligent and unlawful handling of Plaintiff's protected health information, Plaintiff's prescribed medication was stolen. Plaintiff suffered significant physical harm, emotional distress, and loss of privacy as a direct result.

**15.** In 2017, eBay employee Chandra Starks explicitly informed Plaintiff that she would not be considered for a Subject Matter Expert ("SME")/agile/escalations team position because of her ADA accommodation — information that had been improperly disclosed by Ms. Lamoreaux. This constitutes a direct denial of equal promotional opportunity on the basis of disability in violation of 42 U.S.C. § 12112(a).

**16.** Ms. Lamoreaux, in collaboration with at least one other manager, devised and attempted to execute a deliberate plan to fabricate pretextual performance issues against Plaintiff in order to manufacture grounds for her termination. This plan was disclosed to Sherry Quinn who warned Plaintiff directly. HR's response was to reassign Ms. Lamoreaux to oversee international employees — a response that reveals the depth of Defendant's institutional indifference to discriminatory and retaliatory managerial conduct.

**17.** Plaintiff was subjected to repeated racist remarks directed at her during her employment, creating a racially hostile work environment. Plaintiff reported these remarks directly to HR through eBay's Standard Operating Procedures, in writing. These reports generated formal HR case records. Despite formal notice, Defendant failed to take adequate remedial action.

**18.** Plaintiff was further subjected to sexual harassment during her employment. Defendant systematically failed to investigate, remediate, or address this conduct. Plaintiff references this conduct not as a standalone claim but as evidence of the pervasive hostile work environment that characterized her employment with Defendant.

**19.** The sustained stress resulting from Defendant's discriminatory, harassing, and retaliatory treatment directly caused Plaintiff to receive a specific medical diagnosis, the effects of which are ongoing and significant. This constitutes direct, compensable harm caused by Defendant's conduct.

### D. FMLA Interference: Documented, Willful, and Sustained

**20.** On or about December 12, 2022, Plaintiff first contacted Sedgwick — eBay's third-party leave administrator — by telephone and by personal email to initiate leave claims for qualifying medical absences including: a bacterial infection with secondary infection requiring telehealth, urgent care, and emergency room treatment (November 29 – December 2, 2022); a related flare-up (December 13-15, 2022); and infusion treatments for an existing health condition (December 20-22, 2022). Plaintiff received no response to these initial contacts.

**21.** On or about December 18, 2022, Plaintiff made a second contact attempt with Sedgwick. Again, no response was received.

**22.** On December 23, 2022 at 5:24 PM, Plaintiff sent a formal written email to ebay@sedgwickcms.com, copying Sherita Brown at eBay HR directly (sherbrown@ebay.com), explicitly requesting FMLA paperwork and specifically stating: "I also need to know whether I'm now eligible for an FMLA claim or not, and if so, I need to get that started — if not, I can file another ADA with HR, but I believe I should have passed the minimum threshold for hours

worked." This email constitutes formal, written notice to both Sedgwick and eBay HR of Plaintiff's FMLA inquiry, establishing the commencement of the five-business-day response deadline under 29 C.F.R. § 825.300(b). A true and correct copy of this email is attached hereto as Exhibit 1.

23. Defendant failed to provide FMLA notice or paperwork within the legally mandated five (5) business days of Plaintiff's December 23, 2022 written request, as required by 29 C.F.R. § 825.300(b). This violation was not an administrative error. Defendant continued to fail to provide FMLA documentation for over eight (8) months following Plaintiff's initial request, despite repeated follow-up contacts by Plaintiff through every available channel.

24. Throughout this period, Plaintiff made a multitude of attempts to reach Sedgwick by phone and email, the vast majority of which went unanswered. At a previous point, a Sedgwick representative subsequently admitted that the obstructive nature of the process was dictated by eBay itself. Sedgwick voicemails were uninformative, providing no substantive information beyond a callback request. When Plaintiff called back, Sedgwick was repeatedly unreachable. The communication issues were brought to HR directly on multiple occasions.

25. Early in her employment, Plaintiff notified both Sedgwick and eBay that she was unable to access the Sedgwick portal and the internal eBay tools "SHADE" and "NICE." These were known, unresolved technical issues. Plaintiff therefore diligently utilized alternative communication channels, including phone numbers and the email address ebay@sedgwickcms.com, to fulfill her administrative obligations. Plaintiff explicitly communicated her preference for email communication due to her disability — a communication preference accommodation that Sedgwick and eBay consistently disregarded.

26. The eight-month delay in processing Plaintiff's FMLA request forced Plaintiff to utilize short-term disability ("STD") leave rather than FMLA leave from July 2023 through December 2023. STD leave does not carry FMLA's federal job restoration guarantee under 29 U.S.C. § 2614(a). By withholding FMLA paperwork, Defendant effectively stripped Plaintiff of her strongest statutory job protection during a period in which Defendant was simultaneously making personnel decisions about her department.

27. Following this eight-month delay, Defendant retroactively deemed Plaintiff ineligible for FMLA leave. Plaintiff directly and explicitly asked Defendant whether its eight-month delay in processing her request had caused the ineligibility finding — specifically whether she would have been eligible at the time of her December 2022 initial request. Defendant never answered this question. This silence is dispositive.

28. FMLA eligibility is calculated based on the twelve-month period immediately preceding the leave request. Under 29 C.F.R. § 825.110(d), when an employer fails to timely advise an employee of FMLA eligibility and the employee suffers harm as a result, the employer may be estopped from asserting ineligibility. By delaying eight months, Defendant shifted the eligibility calculation window forward, potentially excluding hours that would have established eligibility in December 2022. Defendant manufactured its own eligibility defense through its own violation.

29. Plaintiff's ADA accommodation structure affected the calculation of her hours worked. Defendant never disclosed to Plaintiff that her accommodation structure could affect her FMLA eligibility threshold calculation. If Defendant's accommodation structure was applied in a manner that reduced Plaintiff's counted hours toward the FMLA eligibility threshold, Defendant used the ADA accommodation process as an instrument to deny FMLA eligibility —

simultaneously violating both statutes. See 42 U.S.C. § 12203(b) (prohibiting interference with ADA rights).

30. Compelled by eBay's FMLA obstruction to file an HR complaint against HR for these violations, Plaintiff did so. Plaintiff reasonably believes this HR complaint against HR directly precipitated her retaliatory termination.

### E. The April 3, 2023 Email: Formal Documented Notice of All Material Allegations

31. On April 3, 2023, Plaintiff sent a comprehensive written email to eBay HR formally documenting and reporting: (1) Defendant's FMLA violations, including the failure to provide paperwork and the DOL-mandated five-business-day notice requirement; (2) disability discrimination including denial of promotional opportunities based on her ADA accommodation; (3) the manager-organized plan to "set up" Plaintiff and fabricate performance issues; (4) the dissemination of Plaintiff's protected health information; (5) racial discrimination and retaliation for reporting it; and (6) ongoing patterns of retaliatory conduct. A true and correct copy of this email is attached hereto as Exhibit 2.

32. Defendant's Employee Relations Partner Katie Lawhon (klawhon@ebay.com) acknowledged receipt of Plaintiff's April 3, 2023 email on April 5, 2023 and assigned it formal Case No. 1082413, reference number ref_00D70MyWJ_5004u2srWC2. This formal case number constitutes irrefutable documentary evidence that Defendant received, processed, and was formally on notice of every allegation in Plaintiff's April 3, 2023 email as of that date — nine months before Plaintiff's termination. A true and correct copy of this acknowledgment is attached hereto as Exhibit 3.

33. Case No. 1082413 was subsequently closed by Defendant without apparent substantive investigation or remedial action. Every adverse employment action taken against Plaintiff following April 3, 2023 — including her termination on January 24, 2024 — occurred with Defendant's HR department in formal possession of a documented, case-numbered complaint covering the full scope of Plaintiff's protected activity.

### F. Plaintiff's Exceptional Contributions Upon Return From Leave

34. Plaintiff returned from STD leave on December 26, 2023. Upon her return, Defendant provided no training, orientation, or information regarding departmental changes that had occurred during her absence, forcing Plaintiff to independently navigate and assimilate months of organizational changes.

35. Despite being denied any formal reorientation, Plaintiff voluntarily undertook the consolidation of multiple separate departmental training presentations into a single comprehensive training deck designed to help colleagues understand the full scope of the department's work in relation to KPI metrics. Prior to Plaintiff's consolidation effort, training had been delivered through numerous separate slide decks covering individual topics. Plaintiff consolidated these into one cohesive system, in her own style and methodology, without

additional compensation and without being asked to do so. This work reflected Plaintiff's deep institutional knowledge accumulated over nearly a decade of employment.

36.  Plaintiff completed the comprehensive training deck approximately one week before new employees began their onboarding in her department. Upon learning that new employees were beginning training using her system, Plaintiff proactively requested time to meet with them to gather feedback and ensure the material was effective. This request was approved by management.

37.  On the evening of January 23, 2024, Plaintiff met with the cohort of new employees then being onboarded into her department to review the training deck and gather their feedback. Management had also scheduled Plaintiff to spend several hours training these same new employees on the morning of January 24, 2024.

38.  On the morning of January 24, 2024 — instead of conducting the scheduled training session that management had authorized — Plaintiff was informed of her termination under the purported justification of a "reduction in force" or "downsizing."

39.  The fact that Plaintiff was simultaneously training a cohort of new employees using a comprehensive system she had voluntarily built, and was scheduled by management to continue that training on the morning of her termination, is irreconcilable with any legitimate reduction in force. A department that needs headcount reduced does not schedule institutional knowledge transfer sessions with the employee being eliminated on the morning of their last day.

### G. The Pretextual "Downsizing" — Specific Evidence of Bad Faith

40.  Defendant justified Plaintiff's termination as a "reduction in force" or "downsizing." This justification is demonstrably pretextual for the following specific, documented reasons:

41.  At the time of Plaintiff's termination, a cohort of employees was being onboarded into Plaintiff's department. Whether these individuals were external hires, internal transfers, or lateral moves, their simultaneous onboarding into Plaintiff's department during a purported reduction in force is facially inconsistent with any legitimate downsizing rationale. A department absorbing additional personnel cannot simultaneously claim it needs fewer personnel.

42.  As of Summer 2024, at least two members of the cohort being trained by Plaintiff at the time of her termination — Rosa Kang and Crystal Adrian — remained actively employed in Plaintiff's former department. Their continued employment six months after the purported downsizing confirms that Plaintiff's position was not eliminated for operational reasons.

43.  At the time of her termination, Plaintiff's direct manager documented her performance at 177% of target goals. Other employees in the same department were simultaneously on Performance Improvement Plans ("PIPs") due to poor performance. In a legitimate performance-neutral reduction in force, the employee performing at 177% of target is not the first candidate for elimination. No documented comparative analysis justifying Plaintiff's selection over lower-performing colleagues has been produced.

44.  Plaintiff's termination occurred twenty-nine (29) days after her return from the STD leave that Defendant's own FMLA obstruction forced her onto. This temporal proximity between

protected leave and termination is itself evidence of retaliatory motive. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

**45.** Defendant's initial position that decision-makers had "no access to HR records" at the time of the termination decision was subsequently contradicted by Defendant's own admissions acknowledging access to such records. This inconsistency constitutes evidence of bad faith and consciousness of guilt.

**46.** Plaintiff's termination followed directly upon her filing of an HR complaint against HR for FMLA violations — using Defendant's own Standard Operating Procedures to report Defendant's own misconduct. The retaliatory character of the termination is established by this sequence.

## H. Additional Adverse Actions and Pattern Evidence

**47.** At the time Plaintiff declined to continue participating in an unpaid side project involving eBay's authenticity guarantee program, Plaintiff was simultaneously managing four (4) separate pilot programs within her department, without additional compensation, adequate resources, or training support. Plaintiff's declination of a fifth unpaid project under these circumstances was a reasonable professional boundary, not insubordination, and was directly connected to Defendant's concurrent refusal to provide Plaintiff's FMLA paperwork. No contemporaneous disciplinary action was taken in connection with this declination. Defendant's subsequent use of this decision as a negative talking point in EEOC mediation — in the absence of any contemporaneous disciplinary record — is evidence of post-hoc justification manufacturing.

**48.** During the COVID-19 pandemic, Plaintiff experienced the deaths of six (6) family members in rapid succession, none of whom could be memorialized through traditional funeral services due to pandemic restrictions. During this period of extraordinary personal loss and grief, Plaintiff continued to report to work, continued to perform at exceptional levels, and continued to raise concerns through proper channels. On one occasion during this period, Plaintiff expressed disagreement with contradictory coaching feedback she was receiving in the context of inadequate institutional support and requested HR guidance on how to perform her responsibilities without adequate resources — the precise purpose for which HR guidance mechanisms exist. No disciplinary action was taken. Defendant's characterization of this moment as a performance concern, absent any contemporaneous disciplinary record, is not credible.

**49.** Plaintiff raised concerns about the Promoted Listings program — one of eBay's largest revenue streams — to her leadership, reporting that she had become aware of conduct she reasonably believed constituted serious ethical and legal violations. Due to Defendant's documented pattern of retaliating against employees who raised concerns through formal channels, Plaintiff reasonably feared escalating this report to eBay's ethics or compliance team. This chilling of Plaintiff's protected disclosure activity was a direct and foreseeable consequence of the hostile and retaliatory environment Defendant had created. The suppression of this report through institutional retaliation patterns is itself actionable under 18 U.S.C. § 1514A and constitutes constructive suppression of protected whistleblower activity.

## IV. CAUSES OF ACTION

## COUNT I AMERICANS WITH DISABILITIES ACT — DISABILITY DISCRIMINATION 42 U.S.C. § 12112(A)

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

51. At all times relevant, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. § 12102, as amended by the ADA Amendments Act of 2008. Plaintiff could perform the essential functions of her position with or without reasonable accommodation, as demonstrated by her consistent record of performance at 177%-200% of target goals throughout her employment.

52. Defendant knew of Plaintiff's disability through Plaintiff's active ADA accommodation agreements, through the unlawful disclosure of Plaintiff's medical information by Ms. Lamoreaux, and through the formal HR complaints documented in Case No. 1082413. Defendant discriminated against Plaintiff on the basis of her disability by: denying her promotional opportunities (¶15); unlawfully disclosing her protected medical information causing direct physical harm (¶¶13-14); selecting her for termination while retaining lower-performing employees (¶43); and terminating her twenty-nine days after return from leave that Defendant's own conduct forced her onto (¶44).

53. Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applied in the ADA context by the Tenth Circuit in EEOC v. C.R. England, Inc., 644 F.3d 1028 (10th Cir. 2011), Plaintiff establishes a prima facie case of disability discrimination. Defendant's proffered justifications are pretextual as established by the specific evidence detailed in paragraphs 40-46.

## COUNT II AMERICANS WITH DISABILITIES ACT — FAILURE TO ACCOMMODATE 42 U.S.C. § 12112(B)(5)(A)

54. Plaintiff re-alleges and incorporates all preceding paragraphs.

55. Defendant failed to provide reasonable accommodations including: failing to provide accessible leave administration after notice of Plaintiff's portal access issues; failing to honor Plaintiff's disability-related email communication preference despite explicit written notice; and failing to disclose to Plaintiff that her accommodation structure could affect her FMLA hours eligibility calculation, thereby using the accommodation as an instrument of harm against the very rights it was meant to protect.

56. In Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999) (en banc), the Tenth Circuit held employers have an affirmative duty to engage in the interactive process. Defendant failed this duty entirely. In U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002), the Supreme Court confirmed the employer's obligation to make reasonable accommodations to known limitations. Defendant's conduct violated both standards.

## COUNT III AMERICANS WITH DISABILITIES ACT — RETALIATION AND INTERFERENCE 42 U.S.C. §§ 12203(A) AND 12203(B)

57.  Plaintiff re-alleges and incorporates all preceding paragraphs.

58.  Plaintiff engaged in protected ADA activity including requesting accommodations, utilizing disability-related leave, and formally complaining about ADA discrimination through eBay's Standard Operating Procedures as documented in Case No. 1082413. Defendant retaliated by terminating Plaintiff's employment and subjecting her to the adverse actions described herein. The Tenth Circuit in Proctor v. United Parcel Service, 502 F.3d 1200 (10th Cir. 2007) confirmed all three elements of retaliation are satisfied here.

59.  Defendant further violated 42 U.S.C. § 12203(b) by using Plaintiff's ADA accommodation structure as an instrument to affect her FMLA eligibility calculation, constituting interference with Plaintiff's exercise of ADA rights.

## COUNT IV FAMILY AND MEDICAL LEAVE ACT — WILLFUL INTERFERENCE 29 U.S.C. § 2615(A)(1)

60.  Plaintiff re-alleges and incorporates all preceding paragraphs.

61.  At all relevant times, Plaintiff was an eligible employee under 29 U.S.C. § 2611(2) and Defendant was a covered employer under 29 U.S.C. § 2611(4).

62.  Defendant willfully interfered with Plaintiff's FMLA rights by: (a) failing to respond to Plaintiff's December 12, 2022 initial contact; (b) failing to provide FMLA notice or paperwork within five business days of Plaintiff's formal December 23, 2022 written request to Sedgwick and eBay HR (Exhibit 1), as required by 29 C.F.R. § 825.300(b); (c) continuing to withhold FMLA documentation for over eight months despite Plaintiff's repeated attempts through every available channel; (d) making the Sedgwick communication process effectively inaccessible despite notice of Plaintiff's access issues; (e) retroactively declaring Plaintiff ineligible following an employer-caused delay that shifted the eligibility calculation window; and (f) refusing to answer Plaintiff's direct written question regarding whether Defendant's delay caused the ineligibility finding.

63.  Defendant's interference was willful within the meaning of 29 U.S.C. § 2617(a)(1)(A)(iii). Plaintiff's December 23, 2022 email (Exhibit 1) specifically cited the DOL-mandated eligibility process and expressed Plaintiff's belief that she met the hours threshold. Defendant had specific, written notice of its legal obligations and deliberately failed to meet them. Willful violation mandates liquidated damages equal to the sum of lost wages and benefits.

64.  Under the doctrine of equitable estoppel, codified at 29 C.F.R. § 825.110(d), Defendant is estopped from asserting Plaintiff's ineligibility. Defendant's eight-month delay in processing Plaintiff's December 2022 request shifted the eligibility calculation window, potentially excluding hours that would have established eligibility at the time of the original request. Defendant manufactured the ineligibility it now asserts through its own sustained violation. See

Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721 (2003); Aramburu v. Boeing Co., 112 F.3d 1398 (10th Cir. 1997).

## COUNT V FAMILY AND MEDICAL LEAVE ACT — RETALIATION 29 U.S.C. § 2615(A)(2)

**65.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**66.** Plaintiff engaged in protected FMLA activity by requesting leave, utilizing STD leave necessitated by Defendant's FMLA obstruction, and filing an HR complaint against HR for FMLA violations. Defendant retaliated by terminating Plaintiff's employment twenty-nine (29) days after her return from leave.

**67.** Under Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 963 (10th Cir. 2002) and the McDonnell Douglas framework, Plaintiff satisfies all elements: protected activity, adverse action, and causal nexus established by temporal proximity and the pretextual downsizing justification detailed in paragraphs 40-46. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004) (inconsistent treatment of employees supports inference of pretext).

## COUNT VI TITLE VII — RACIAL DISCRIMINATION 42 U.S.C. § 2000E-2(A)

**68.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**69.** Defendant discriminated against Plaintiff on the basis of race by: subjecting her to racial slurs and a racially hostile work environment (¶17); paying her less than comparable male colleague Raphael Garcia (¶¶11-12); denying her promotional opportunities (¶15); and terminating her while retaining employees with inferior documented performance records (¶¶40-46).

**70.** Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), Plaintiff establishes a prima facie case. Defendant's pretextual justifications are dismantled by the specific evidence in paragraphs 40-46. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) (plaintiff may prove pretext by showing stated reason has no basis in fact, was insufficient to motivate the action, or did not actually motivate it — all three grounds are satisfied here).

## COUNT VII TITLE VII — HOSTILE WORK ENVIRONMENT 42 U.S.C. § 2000E-2(A)(1)

**71.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**72.** Plaintiff was subjected to a work environment permeated with racial harassment, sexual harassment, disability-related harassment, and systematic retaliation that was sufficiently severe or pervasive to alter the conditions of her employment. Defendant knew of this environment

through formal HR complaints documented in Case No. 1082413 and failed to take adequate corrective action.

**73.** Under Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) and Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the totality of circumstances establishes a hostile work environment. Under Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), Defendant bears liability for failing to take prompt corrective action after receiving formal notice.

## COUNT VIII TITLE VII — RETALIATION 42 U.S.C. § 2000E-3(A)

**74.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**75.** Plaintiff engaged in protected Title VII activity by reporting racial harassment and sexual harassment to HR through eBay's Standard Operating Procedures on multiple documented occasions. Defendant retaliated through fabricated performance concerns, denial of promotional opportunities, denial of equal compensation, and termination.

**76.** Under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006), retaliation encompasses any action that would dissuade a reasonable employee from making a charge of discrimination. The adverse actions here far exceed this threshold. Under University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013), Plaintiff's protected activity was a but-for cause of Defendant's adverse actions, as demonstrated by the documented sequence of complaints followed by adverse employment consequences.

## COUNT IX EQUAL PAY ACT 29 U.S.C. § 206(D)

**77.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**78.** Plaintiff performed substantially equal work requiring equal skill, effort, and responsibility under similar conditions to Raphael Garcia, a male employee in the identical Premium Services Front Office position who commenced employment contemporaneously with Plaintiff. Defendant paid Plaintiff a substantially lower wage, with no seniority, merit, production, or other legitimate differential justification. See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). The 6% raise differential, never explained by Defendant despite direct inquiry, constitutes a per se violation of 29 U.S.C. § 206(d)(1).

## COUNT X ADA — UNLAWFUL DISCLOSURE OF MEDICAL INFORMATION 42 U.S.C. § 12112(D)

**79.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**80.** The ADA requires employers to maintain employee medical information as confidential records. 42 U.S.C. § 12112(d)(3)(B). Defendant, through Ms. Lamoreaux and others, repeatedly

disclosed Plaintiff's disability status, accommodation details, and medical information to unauthorized personnel. As a direct, foreseeable, and proximate result, Plaintiff's prescription medication was stolen and Plaintiff suffered physical harm, emotional distress, and loss of privacy.

## COUNT XI SOX WHISTLEBLOWER RETALIATION 18 U.S.C. § 1514A

81. Plaintiff re-alleges and incorporates all preceding paragraphs.

82. eBay is a publicly traded company subject to Section 806 of the Sarbanes-Oxley Act. During her employment, Plaintiff became aware of systematic manipulation of eBay's Promoted Listings program — one of eBay's most material revenue streams — and reported her concerns to her leadership. Plaintiff reasonably believed this conduct constituted violations of federal securities laws including 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Internal reporting to supervisory personnel constitutes protected activity under SOX. See Wiest v. Lynch, 710 F.3d 121, 132 (3d Cir. 2013).

83. Plaintiff could not safely escalate this report to eBay's ethics or compliance team due to Defendant's documented pattern of retaliating against employees who used internal reporting channels — a pattern Plaintiff had personally experienced and documented across nine years of employment. This chilling of further protected disclosure was itself caused by Defendant's prior retaliatory conduct. See Allen v. Admin. Review Bd., 514 F.3d 468, 477 (5th Cir. 2008) (objective reasonableness standard for protected activity).

84. Defendant retaliated against Plaintiff for her protected disclosure by terminating her employment. Plaintiff is entitled to all relief under 18 U.S.C. § 1514A(c), including reinstatement, back pay with interest, and special damages.

## COUNT XII DODD-FRANK WHISTLEBLOWER ANTI-RETALIATION 15 U.S.C. § 78U-6(H)

85. Plaintiff re-alleges and incorporates all preceding paragraphs.

86. Plaintiff has reported or is imminently reporting the Promoted Listings manipulation to the SEC's Office of the Whistleblower, activating protection under 15 U.S.C. § 78u-6(h). See Digital Realty Trust, Inc. v. Somers, 583 U.S. 149 (2018). The six-year statute of limitations under 15 U.S.C. § 78u-6(h)(1)(B)(iii) renders this claim timely. Defendant's termination of Plaintiff constitutes retaliation for this protected reporting activity, entitling Plaintiff to two times back pay with interest and attorneys' fees under 15 U.S.C. § 78u-6(h)(1)(C).

## COUNT XIII UTAH ANTIDISCRIMINATION ACT UTAH CODE ANN. §§ 34A-5-106(1)(A); 34A-5-107

**87.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**88.** The UADA prohibits discrimination on the basis of race, sex, and disability. Defendant violated the UADA through all conduct described herein. Utah courts interpret the UADA consistently with federal Title VII and ADA precedent. See Retherford v. AT&T Communications of the Mountain States, Inc., 844 P.2d 949 (Utah 1992). All federal liability bases apply with equal force to Plaintiff's UADA claims.

### COUNT XIV UTAH COMMON LAW — WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY TOUCHARD V. LA-Z-BOY, INC., 2006 UT 71

**89.** Plaintiff re-alleges and incorporates all preceding paragraphs.

**90.** Utah recognizes wrongful discharge claims when termination violates a clear and substantial public policy. See Touchard v. La-Z-Boy, Inc., 2006 UT 71, ¶ 17, 148 P.3d 945; Berube v. Fashion Centre, Ltd., 771 P.2d 1033 (Utah 1989). Defendant's termination of Plaintiff violated the public policies embodied in the FMLA, the ADA, Title VII, the Securities Exchange Act, and Utah Code Ann. § 34A-5-106. Plaintiff is entitled to compensatory and punitive damages. See Mitchell v. Pearson Enterprises, 697 P.2d 240 (Utah 1985).

### V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paige Williams respectfully prays that this Court enter judgment in her favor and grant the following relief:

1. Back pay in an amount to be proven at trial, including all lost wages, bonuses, and benefits from the date of termination, including the wage differential owed relative to comparable male colleague Raphael Garcia calculated from the date the disparity commenced, together with pre-judgment interest;

2. Front pay and/or reinstatement at the Court's discretion;

3. Compensatory damages for emotional distress, pain, suffering, loss of enjoyment of life, humiliation, physical harm resulting from the unlawful disclosure of medical information, the ongoing medical diagnosis caused by Defendant's sustained misconduct, and injury to professional reputation;

4. Liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii), equal to the sum of lost wages and benefits, based on Defendant's willful violation;

5. Two times back pay under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(C);

6. Punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) for Defendant's malicious and reckless disregard of Plaintiff's federally protected rights;

7. Injunctive relief including independent monitoring of eBay's HR, ethics, compliance, and leave administration functions;

8. An order directing comprehensive overhaul of Defendant's third-party leave administration processes to ensure ADA-compliant accessibility for all employees;

9. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), and applicable Utah law;

10. Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

11. Such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted this 18 day of May 2026.

Paige Williams
**45A PHEASANT DRIVE**
**HURRICANE, UTAH 84737**
**615-481-6760**
**615paige@gmail.com**

## EXHIBIT LIST

**Exhibit 1:** Email from Plaintiff to ebay@sedgwickcms.com, CC Sherita Brown (sherbrown@ebay.com), dated December 23, 2022 — Formal FMLA Request with eBay HR Notice

**Exhibit 2:** Email from Plaintiff to eBay HR, dated April 3, 2023 — Comprehensive Discrimination and Retaliation Complaint

**Exhibit 3:** Email from Katie Lawhon, Employee Relations Partner (klawhon@ebay.com), dated April 5, 2023 — Formal Acknowledgment, Case No. 1082413, ref_00D70MyWJ_5004u2srWC2

**Exhibit 4:** EEOC Right-to-Sue Notice

**Exhibit 5:** Additional documentary evidence to be identified through discovery

# EXHIBIT I:

From: Williams, Paige
Sent: Friday, December 23, 2022 5:24 PM
To: ebay@sedgwickcms.com
Cc: Brown, Sherita <sherbrown@ebay.com>
Subject: I need assistance in opening a claim

Paige Williams
04/19/1993
eBay employee ID 00280425

I've tried calling in, and I've also emailed from my personal email account on Dec 12 and 18, but I haven't received any response as of yet. I'm not sure if all the claims would be together as one, or whether they need to be separate, but I have a few consecutive days where I need to submit a claim. These are for separate issues, and were treated by different doctors, so I'm assuming they'll have to be separate claims. All of which are for less than 7 consecutive days, so I understand they were too short to qualify for any short term disability payouts, which is totally fine. I'm more concerned about getting the absences approved, so I'm hoping this will be relatively straight forward. In my emails, I've attached the medical records I'd received for the treatments, but I would appreciate if you could send me the packets so I can send over the ROI.

As included in my first email, I also need to know whether I'm now eligible for an FMLA claim or not, and if so, I need to get that started – if not, I can file another ADA with HR, but I believe I should have passed the minimum threshold for hours worked.

Absences which I'm looking to open claims for are below:

11/29-12/2 – During this time, I had a bacterial infection, which led to a secondary infection. I'd spoken with multiple doctors through telehealth, as well as multiple urgent care visits, followed by an ER visit.

12/13-12/15 – I had an additional flare up caused by the previous infection.

12/20-12/22 – I had a series of infusions for an existing health issue. There are side effects that last for up to 24 hours following each infusion, which prevented me from working, as it would have gone against eBay's established drug policy as it relates to legally prescribed medication.

I've also faxed in the medical documents that I've received, but again, I'd appreciate if I could get the packets sent over asap so I can get these sent back to you. These were also sent in a series of emails, as I couldn't attach them to a single message. They'll all come from my personal email account below. Appreciate your help!

# EXHIBIT II:

ebay    Williams, Paige ✅ <paiwilliams@ebay.com>                                                                Mon, Apr 3, 2023, 1:20 PM    ★    ☺    ↩    ⋮
to _myservice, me ▾

I'd prefer to discuss this further via email, if that's okay. eBay doesn't have a good history with addressing concerns regarding discrimination, or FMLA violations, so I'd rather have things in writing. I felt like I had provided sufficient information, but I'm happy to elaborate on my concerns again.

1. I'd like a fully copy of my employee personnel file, including shade/occurrence history
2. I'd like more insight into why I've been denied the ability to exert my FMLA rights. I've attempted contacting Sedgwick multiple times, to no avail. They have yet to respond to any emails from November 2022, so I'm still holding out for that, I suppose. I've also tried calling, but after waiting 45 minutes on hold, I couldn't ever reach a human. I then let my TL know that Sedgwick wasn't responding and that I simply didn't know how to proceed, aside from contact HR, which I did. My HR case was then closed because they "didn't see any claims opened with Sedgwick" although that's why I'd contacted HR in the first place. I've made it abundantly clear that I'm eligible for FMLA, I've invoked my rights numerous times to eBay and Sedgwick, but I've been denied without cause. Per DOL, employers are required to provide a notice of rights within 5 business days of receiving a claim of FMLA (even without calling it by name, but I did specify FMLA in ALL communications so there wasn't any confusion), and I've made it known that I'm eligible and want to invoke said rights, but we're now going on 5 months. I think that's sufficiently gracious. My TL also mentioned that other teammates hadn't had these same issues with Sedgwick, which makes me believe there's retaliatory measures taken against me to ensure I can't assert my rights.
3. Regarding the discrimination against me for being disabled, I think it's pretty cut and dry. A position in Ireland was confirmed to be accepting US applicants, and this was sent out to us if we were interested in applying, so I applied directly from the link in the email. I let my TL know I was throwing my hat in the ring, but I soon received an email from the recruiter informing me that I wasn't being considered because I was in the US – nothing about experience, qualifications, or performance were mentioned; solely that I was in the wrong location for the role. I initially didn't think much of it, assuming it was a misunderstanding somewhere. However, I then got a meeting maker for a farewell for another employee within social media, and I reached out to see what it was about. Turns out, they were offered the position, although they're also here in Utah. I was then informed that other US-based employees were also interviewed and considered for the job. To be clear, I'm okay if I'm just not the best candidate, but that's the not the issue here. I was held to a different set of rules that didn't apply to other employees who aren't part of a protected class. One could infer with this that I was singled out simply for being disabled. I'm concerned that this is in retaliation for previous discrimination claims I've made, as my medical information has been allowed to be shared, I've been told to my face that I wouldn't be considered for promotions due to my ADA accommodation (this was years ago, but I have copies of all allegations going back 8.5 years), and I've been discouraged from using FMLA/ADA on the basis of because I have it doesn't mean I have to use it. Once, a TL even told a teammate about a plot to get me fired because I'd made complaints about said TL sharing my medical information during our team meeting.

In my time at eBay, there have been ongoing violations of my civil rights. I've brought these concerns to HR time and time again, but nothing ever happens. At this point, it's no longer specific managers or anything that are targeting me; it appears to be the organization as a whole. When you consider that our leadership was willing to target and harass sellers with complaints – to the extent of sending dead animal parts in the mail – if paints a picture of a company who simply believes they're above the law. As someone who strives to live an ethical and moral life, I don't believe that any person or organization is above the law, so I'd truly be interested to know why it is I continue to be targeted and harassed as part of my employment. I'm a top performer, so I know it's not about my performance. I can also handle every line of business and am an expert in multiple, so it's also not about qualifications or experience. Honestly, I'm tired of being treated as less than for my disabilities (that are outside of my control, and trust me, they're more impactful for me than they are for eBay), and according to the law, I have protections to ensure I can't be treated like this, so why does it keep happening?



## EXHIBIT III:

For om: Myservice_support <myservice_support@ebay.com>
Sent: Saturday, April 1, 2023 9:16 AM
To: Williams, Paige <pawilliams@ebay.com>
Subject: Discrimination - HR Case 1082413 [ ref:_00D70MyWJ._5004u2srWC2:ref ]

Hello Paige,

I have received your concern and would like to take some time to gather details from you. Please let me know what your availability it like over the next week and if you prefer a phone call or zoom meeting, and I will set up some time for us to discuss.

Thanks,

Katie Lawhon, PHR
Employee Relations Partner
People Experience
eBay
klawhon@ebay.com

ref:_00D70MyWJ._5004u2srWC2 ref

↩ Reply     ↩ Reply all     → Forward     ☺

## EXHIBIT IV:









**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH — CENTRAL DIVISION**

**Williams v. eBay Inc.**
Civil Action No.: _____

**COMPLAINT ADDENDUM — SUPPLEMENTAL FACTUAL ALLEGATIONS
AND
ADDITIONAL COUNTS XIII THROUGH XV**
*(To Be Incorporated into and Constitute Part of the Civil Complaint)*

**SUPPLEMENTAL FACTUAL ALLEGATIONS WHISTLEBLOWING — PROMOTED
LISTINGS FRAUD**

**84.**  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

**85.**  eBay Inc. is a publicly traded company whose shares are listed on the NASDAQ Global Select Market (ticker: EBAY). eBay files periodic reports with the Securities and Exchange Commission ("SEC"), including annual reports on Form 10-K and quarterly reports on Form 10-Q. eBay's Promoted Listings program — a paid advertising service offered to third-party sellers on the eBay marketplace — constitutes one of eBay's largest and most material revenue streams, and its performance metrics are material to investors and publicly reported.

**86.**  During her employment, Plaintiff became aware of an open and systemic practice within eBay in which members of a specific internal team were deliberately and artificially manipulating metrics, data, or reporting associated with eBay's Promoted Listings program (the "Scheme"). This manipulation was not an isolated error but a recognized, ongoing practice of which multiple employees were aware, and which Plaintiff reasonably believed constituted fraud, securities fraud, and/or violations of the Federal Trade Commission Act, 15 U.S.C. § 45.

**87.**  Plaintiff reasonably believed that the Scheme, if reflected — directly or indirectly — in eBay's publicly reported financial statements, quarterly earnings reports, investor communications, or SEC filings, constituted a violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5), as well as a violation of Section 5 of the FTC Act (15 U.S.C. § 45) through the perpetration of deceptive and unfair practices against marketplace sellers and advertisers who paid for Promoted Listings placements.

**88.**  Plaintiff reported her knowledge of and concerns about the Scheme to her leadership at eBay. This report constitutes protected activity under 18 U.S.C. § 1514A(a)(1) (Sarbanes-Oxley), 15 U.S.C. § 78u-6(h) (Dodd-Frank), and Utah common law governing whistleblowing and public policy. The report was made in good faith, based on Plaintiff's reasonable belief that the conduct violated federal securities laws, FTC regulations, and obligations of honest dealing owed to eBay's shareholders, investors, and marketplace participants.

**89.** Due to the pervasive hostile, retaliatory, and bad-faith conduct already documented herein — including the systematic failure of eBay's HR and ethics infrastructure to protect employees who raised concerns — Plaintiff reasonably feared and was effectively deterred from formally escalating her report to eBay's ethics or compliance team. This chilling of further protected activity was itself a direct consequence of the hostile work environment and pattern of retaliation described herein.

**90.** Following Plaintiff's disclosure of the Scheme to leadership, Defendant took adverse employment actions against Plaintiff, including but not limited to the retaliatory termination of her employment on January 24, 2024, under the pretext of a purported "reduction in force." The temporal and causal connection between Plaintiff's internal report of the Scheme and her termination is direct and demonstrable.

**91.** Defendant's conduct in terminating an employee who reported suspected securities fraud and FTC violations, and in maintaining a work environment so hostile that the employee feared further escalation, constitutes a willful and reckless disregard for federal and state whistleblower protections, the integrity of the securities markets, and the rights of eBay's marketplace participants.

## COUNT XIII SOX WHISTLEBLOWER RETALIATION 18 U.S.C. § 1514A
## (SARBANES-OXLEY ACT § 806)

**92.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

**93.** eBay Inc. is a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and is therefore subject to Section 806 of the Sarbanes-Oxley Act of 2002, codified at 18 U.S.C. § 1514A. Section 806 prohibits any publicly traded company from discharging, demoting, suspending, harassing, or otherwise discriminating against an employee who provides information regarding conduct that the employee reasonably believes constitutes a violation of federal securities laws, SEC rules, or any provision of federal law relating to fraud against shareholders.

**94.** Plaintiff engaged in protected activity by reporting her reasonable belief that the Promoted Listings Scheme constituted fraud and/or securities law violations to her supervisory personnel at eBay, as set forth in paragraphs 86-90 above. Internal reporting to supervisory personnel constitutes protected activity under SOX Section 806. See Leshinsky v. Telvent GIT, S.A., 942 F. Supp. 2d 432 (S.D.N.Y. 2013); Wiest v. Lynch, 710 F.3d 121, 132 (3d Cir. 2013) ("[A]n employee engages in protected activity when he or she reports to a supervisor conduct that the employee reasonably believes constitutes a violation of the securities laws.").

**95.** The standard for protected activity under SOX is objective reasonableness: the employee need not establish an actual violation of securities law, only that a reasonable person in the employee's position would believe the reported conduct constituted such a violation. See Allen v. Admin. Review Bd., 514 F.3d 468, 477 (5th Cir. 2008); Feldman v. Law Enforcement Associates Corp., 752 F.3d 339 (4th Cir. 2014). Given the systemic nature of the Promoted Listings Scheme and eBay's status as a publicly traded company with material revenue exposure from this program, Plaintiff's belief was manifestly reasonable.

**96.** Defendant retaliated against Plaintiff for her protected activity by terminating her employment. This retaliation violates 18 U.S.C. § 1514A. Plaintiff is entitled to all relief authorized under 18 U.S.C. § 1514A(c), including reinstatement, back pay with interest, and special damages including litigation costs, expert fees, and attorneys' fees.

### COUNT XIV DODD-FRANK WHISTLEBLOWER ANTI-RETALIATION 15 U.S.C. § 78U-6(H) (SECURITIES EXCHANGE ACT § 21F)

**97.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

**98.** Section 21F of the Securities Exchange Act of 1934, as added by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, codified at 15 U.S.C. § 78u-6, prohibits retaliation against individuals who provide information to the SEC about possible violations of the federal securities laws, or who make disclosures required or protected under SOX or the Securities Exchange Act.

**99.** Pursuant to Digital Realty Trust, Inc. v. Somers, 583 U.S. 149 (2018), protection under the Dodd-Frank anti-retaliation provision requires that the individual have reported the suspected violation to the SEC. Plaintiff has reported or intends to imminently report the Promoted Listings Scheme to the SEC's Office of the Whistleblower, and this Count is filed in conjunction with or immediately following such report. The six-year statute of limitations under 15 U.S.C. § 78u-6(h)(1)(B)(iii) renders this claim timely.

**100.** Plaintiff provided information to the SEC (17791-349-121-760) regarding conduct that she reasonably believes constitutes a violation of the federal securities laws, including potential manipulation of revenue-generating metrics that are material to eBay's SEC filings. This report constitutes protected activity under 15 U.S.C. § 78u-6(h)(1)(A).

**101.** Defendant discharged Plaintiff because of her protected activity, in violation of 15 U.S.C. § 78u-6(h)(1)(B). Plaintiff is entitled to the remedies provided under 15 U.S.C. § 78u-6(h)(1)(C), including reinstatement, two times back pay with interest, and attorneys' fees and costs.

### COUNT XV UTAH COMMON LAW — WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY (WHISTLEBLOWER — SECURITIES FRAUD AND FTC VIOLATIONS)

**102.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

**103.** Utah recognizes a tort claim for wrongful discharge when an employer terminates an at-will employee for reasons that violate a clear and substantial public policy of the State. See Touchard v. La-Z-Boy, Inc., 2006 UT 71, ¶ 17, 148 P.3d 945, 949 (Utah 2006); Berube v. Fashion Centre, Ltd., 771 P.2d 1033 (Utah 1989).

**104.** The clear and substantial public policies violated by Defendant's conduct include: (a) the federal interest in protecting the integrity of public securities markets, as reflected in the Securities Exchange Act of 1934 and the Sarbanes-Oxley Act; (b) the federal and state interest in

deterring fraud against marketplace participants, as reflected in the FTC Act, 15 U.S.C. § 45; and (c) Utah's own strong interest in honest commercial conduct and the protection of employees who, in good faith, report suspected fraud to their employers or regulatory authorities. See Utah Code Ann. § 34A-5-106 (Utah Antidiscrimination Act, reinforcing anti-retaliation public policy).

**105.** Defendant terminated Plaintiff's employment, at least in part, because of her report to leadership regarding the Promoted Listings Scheme and her reasonable belief that the Scheme constituted fraud and violations of law. This termination directly contravenes the substantial public policies described above and constitutes wrongful discharge under Utah common law.

**106.** As a direct and proximate result of Defendant's wrongful discharge, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other compensatory and consequential damages in an amount to be proven at trial. Plaintiff is further entitled to punitive damages given the willful and malicious nature of Defendant's conduct. See Mitchell v. Pearson Enterprises, 697 P.2d 240 (Utah 1985) (punitive damages available for intentional and malicious torts).

## SUPPLEMENTAL PRAYER FOR RELIEF

In addition to the relief requested in the original Complaint, Plaintiff respectfully prays that this Court:

1. Award Plaintiff all remedies available under 18 U.S.C. § 1514A(c), including reinstatement, back pay with interest, and special damages for the SOX whistleblower retaliation;

2. Award Plaintiff all remedies available under 15 U.S.C. § 78u-6(h)(1)(C), including reinstatement, two times (2x) the amount of back pay otherwise owed, with interest, and attorneys' fees and costs, for the Dodd-Frank whistleblower retaliation;

3. Award Plaintiff compensatory and punitive damages for the common law wrongful discharge claim in violation of public policy;

4. Issue a referral to the U.S. Securities and Exchange Commission and the Federal Trade Commission regarding Defendant's Promoted Listings Scheme, as this Court deems appropriate; and

5. Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted this 18 day of May, 2026.

Paige Williams